Colonial Acres, Inc. *vs.* Town of North Reading.

Middlesex.    May 13, 1975. — July 25, 1975.

Present: Rose, Keville, & Armstrong, JJ.

*Zoning,* Special permit. *Damages,* Eminent domain. *Value. Eminent Domain,* Damages. *Evidence,* Of value, Judicial discretion.

In a proceeding to determine just compensation for a parcel taken by eminent domain, the trial judge was warranted in excluding evidence of the parcel's potential use as a sanitary landfill where the town zoning by-law barred such a use, except by special permit, even though the board of appeals had granted such a permit to the town before the taking, and where there was no evidence of a reasonable probability of a change in the zoning by-law which would permit the use. [385-387]

Petition filed in the Superior Court on June 4, 1970.

The case was tried before *Moynihan,* J.

*James W. Killam, III,* for the plaintiff.

*Edward F. Cregg,* Town Counsel, for the town of North Reading.

Rose, J.    This is an amended petition for an assessment of damages under G. L. c. 79, § 14, following the taking by eminent domain of the petitioner's land on May 1, 1969.

The case is before us on the petitioner's exceptions to the trial judge's exclusion of evidence, to his refusal to give certain requested instructions to the jury, and to certain of the instructions given, all of which related to the trial judge's refusal to allow the jury to consider the value of one of three parcels of the land as a potential site for a sanitary landfill, which use was claimed by the petitioner to be the highest and best use for that parcel. Exceptions relating to a colloquy between the judge and counsel for the petitioner are not argued, and are therefore waived.

The parcel in question, vacant land at the time of the taking, was located in a district zoned for residential use. On March 23, 1966, while the property was still owned by the petitioner, the North Reading board of appeals, on petition of the North Reading refuse disposal committee, granted permission to use the land for a sanitary landfill.

Contrary to the contention of the petitioner that the March 23, 1966, decision of the board was a variance or special permit which ran with the land, we conclude that the board granted a special permit (see G. L. c. 40A, §§ 4 & 15; *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649, 652 [1947]; contrast *Bottomley* v. *Board of Appeals of Yarmouth,* 354 Mass. 474 [1968]) running only to the town of North Reading (town). Compare *Todd* v. *Board of Appeals of Yarmouth,* 337 Mass. 162, 169 (1958). We base that conclusion on our reading of the report of the findings of the board of appeals, which contained the following.[1] It was the North Reading refuse disposal committee which had petitioned for the permit. (A petitioner for a special permit may, in certain circumstances, be a person other than the owner of the property. Compare *Carson* v. *Board of Appeals of Lexington, supra.*) That committee had previously hired a private consulting firm which had recommended the site for use by the town. The permit was

---

[1] While the March 23, 1966, decision of the board of appeals was consistently excluded by the trial judge on the numerous occasions on which the petitioner attempted to offer it in evidence, a certified copy thereof was marked for identification and is before us as part of the bill of exceptions.

granted pursuant to c. II, § 7 (e), of the zoning by-law of North Reading, which permits land in a residential district to be used for a "municipal use" with the approval of the board of appeals. The permit was granted with the qualification that a governing group be established to oversee the operation of the sanitary landfill dump and "that the membership contain at least one member from the Boards of Selectmen, Public Works, and Health, of the Town." Finally, the board's findings indicate that it was aware that the town was considering exercising its power of eminent domain with respect to the property. Cf. *Sellors* v. *Concord,* 329 Mass. 259, 260-262 (1952).

As a general principle, the owner of land has a right to recover its market value considered in light of the highest and best use to which the land could reasonably be put. See *Ford* v. *Worcester,* 339 Mass. 657, 662-663 (1959); *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. 684, 685-686 (1972); Orgel, Valuation under the Law of Eminent Domain, §§ 29-30 (2d ed. 1953). While the land was undoubtedly well suited at the time of the taking for use as a sanitary landfill (compare *Smith* v. *Commonwealth,* 210 Mass. 259, 261-262 [1911]), that use was prohibited by the zoning laws existing at the time of the taking (compare *Joly* v. *Salem,* 276 Mass. 297, 303 (1931); *Skyline Homes, Inc.* v. *Commonwealth, supra,* at 688), with the exception of the special permit granted to the town.[2]

Nevertheless, if the petitioner could have shown a reasonable probability that the zoning restriction would soon be removed, the use of the land as a sanitary landfill would have been relevant so far as the probability of a zoning change might have been reflected in the fair market value at the time of the taking. See *Wenton* v. *Commonwealth,* 335 Mass. 78, 81-83 (1956); *Skyline Homes, Inc.* v. *Com-*

---

[2] The petitioner does not contend that it is entitled to any accretion in value by virtue of the land's "special availability for public use" by the town. See Nichols, Eminent Domain, § 12.315 (Rev. 3d ed. 1974); see also *Sargent* v. *Merrimac,* 196 Mass. 171, 176 (1907). See generally *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167 (1884); Nichols, *supra,* § 8.61.

monwealth, *supra*, at 686-688. See also *Brush Hill Dev., Inc.* v. *Commonwealth*, 338 Mass. 359, 363-364 (1959).

The trial judge must determine at the threshold whether there is sufficient evidence of a reasonable probability of a change in zoning to warrant submitting such an issue to the jury, and in this the judge is entitled to "a margin of ultimate discretion." *Skyline Homes, Inc.* v. *Commonwealth, supra*, at 687. Anno. 9 A.L.R. 3d 291, 324-325 (1966). Orgel, *supra*, § 34. We agree with the trial judge's apparent conclusion that the grant of the special permit to the town was not highly probative of the probability that a permit would also be granted to a private petitioner. Cf. *Pierce* v. *Wellesley*, 336 Mass. 517, 523-524 (1957). As this was the only proof offered relating to the possibility of securing a change in the existing zoning, the judge did not abuse his discretion in ruling that the petitioner did not set out an adequate foundation to allow the introduction of evidence relating to the value of the land for use as a sanitary landfill. Compare *Skyline Homes, Inc.* v. *Commonwealth, supra*. An opinion of value which ignores existing zoning or merely assumes a change in zoning is properly excluded. See *H. E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 324 (1966); *Skyline Homes, Inc.* v. *Commonwealth, supra*. Contrast *Lee* v. *Commonwealth*, 361 Mass. 864 (1972).

*Exceptions overruled.*