ROBERT C. HAUFLER *vs.* COMMONWEALTH.

Suffolk.     February 10, 1977. — May 9, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Appeal, Eminent domain proceedings. *Evidence,* Of value. *Damages,* Eminent domain. *Eminent Domain,* Damages.

Where a trial de novo has been claimed under G. L. c. 79, § 22, after a trial before a judge sitting without a jury, appellate review of the trial judge's rulings concerning the admissibility of evidence is not available to a party before completion of the second trial. [528-532]

In an eminent domain proceeding under G. L. c. 79, § 22, there was no error in the exclusion of evidence of the sale price of a similar parcel of land where the circumstances of the sale were such that the value of the transaction was greater by an unascertained amount than the actual price paid reflected. [532-533]

PETITION filed in the Superior Court on December 5, 1969.

Haufler *v.* Commonwealth.

The case was heard by *Ford*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert A. Mulligan*, Assistant Attorney General, for the Commonwealth.

*George A. McLaughlin, Jr.* (*John S. Leonard* with him) for the plaintiff.

WILKINS, J.   In this eminent domain case we conclude that the Commonwealth is not now entitled to appellate review of a Superior Court judge's ruling which excluded certain evidence in a trial before him without jury and that, in the normal course, a party to such a proceeding must wait until after the jury trial which has been requested pursuant to G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1, before appellate review may be obtained. Because the procedural question is one of first impression, we exercise our discretion in this instance not to dismiss the appeal. We consider the admissibility of the evidence and conclude that it properly was excluded.

1. In November, 1969, the Commonwealth took from the plaintiff substantial areas of upland and abutting tidal flats in the Columbia Point section of Dorchester for the construction of the Boston campus of the University of Massachusetts. As provided in the circumstances by G. L. c. 79, § 22, major portions of which are set forth in the margin,[1] a trial was held before a Superior Court judge

---

[1] General Laws c. 79, § 22, provides: "*Section 22.* . . . The trial shall be by a judge of the superior court sitting without a jury. . . . The judge presiding at the trial shall file a written decision or finding with the clerk who shall forthwith notify the parties or counsel of record thereof. The decision or finding shall include a statement of any damages that are awarded and a report of the material facts found by him. Any party to the action aggrieved by the decision or finding shall have the right to a trial de novo before another judge sitting with a jury. The request for a trial de novo shall be filed with the clerk within ten days after the party making the request has received notice of such decision or finding. The decision or finding, including any award of damages, shall be prima facie evidence upon such matters as are put in issue by the pleadings. Notwithstanding the foregoing provisions of this paragraph, trial shall be held before a jury in the first instance if all parties

sitting without a jury. In the course of that trial, two experts on behalf of the Commonwealth based their opinions of value in part on a 1967 sale of approximately 114 acres of upland and surrounding tidal flats in Quincy. The judge took evidence concerning both the sale price of the Quincy property and various conditions of the sale, subject to the right of the plaintiff to move later to strike that evidence. At the conclusion of the evidence, the judge allowed the plaintiff's motion to strike the evidence concerning the sale of the Quincy property.

The judge made a decision or finding which included "a statement of . . . [the] damages that . . . [were] awarded and a report of the material facts found by him." G. L. c. 79, § 22. Each party filed a timely request under § 22 for a trial de novo in the Superior Court. When that Superior Court jury trial is held, the judge's decision or finding, including his award of damages, will be "prima facie evidence upon such matters as are put in issue by the pleadings." *Id.* The Commonwealth has undertaken to appeal from a judgment entered on the findings of the judge, although each party's claim of a trial de novo is pending. We granted the Commonwealth's application for direct appellate review.

If a trial de novo has been claimed under G. L. c. 79, § 22, after a trial before a judge sitting without a jury, appellate review of the trial judge's rulings concerning the admissibility of evidence is not immediately available to a party. Section 22 does not provide for such review, and we decline to engraft such a procedure onto the statutory pattern.

A judgment on the decision of the judge sitting without a jury is not a "judgment" or "final judgment" from which an appeal may be taken, if a jury trial has been claimed seasonably. A judgment or final judgment means "the act of the trial court finally adjudicating the rights of the par-

file a written agreement requesting an initial jury trial, provided that if an initial jury trial is granted, no petition for a trial de novo by any of the aggrieved parties shall be granted."

ties affected by the judgment . . . ." Mass. R. Civ. P. 54 (a), 365 Mass. 820 (1974). A decision by the judge sitting without a jury under § 22 does not finally adjudicate the rights of the parties if, within the statutory ten-day period, one or both request a trial de novo. See *School Comm. of Agawam* v. *Agawam Educ. Ass'n,* 371 Mass. 845, 846-847 (1977).[2]

If the judge who tries the case without a jury concludes that there is an issue which so affects the merits of the case that it should be determined by an appellate court before any further proceedings, he may report the matter to the Appeals Court. G. L. c. 231, § 111. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). The Commonwealth did not request a report. The judge did not elect to report the issue. Such a procedure is the only method by which interlocutory review could have been had.[3]

We recognize, as the Commonwealth argues, that a judge's decision or finding is admissible at the jury trial and that, if it is the product of an error of law, its admission in evidence may be found to be reversible error on appeal from a judgment following the jury's verdict, thus requiring new or further proceedings before a judge sitting without a jury and possibly a new jury trial. On the other hand, the asserted error may not prejudice the apparently aggrieved party when the result of the jury trial is known.

---

[2] It appears that a judgment on the findings of the trial judge should be entered even when, within ten days of notice of the decision, one or both parties claim a trial de novo under § 22. Massachusetts Rules of Civil Procedure 58 (a), as amended, 371 Mass. 908 (1977), indicates that judgment should be entered forthwith, unless the court orders otherwise. However, G. L. c. 79, § 37, as amended by St. 1973, c. 983, § 3, indicates that, for the purpose of computing interest, the date of entry of judgment refers to judgment in the trial de novo, if there is one.

[3] We accept the Commonwealth's argument that the second Superior Court judge, the jury trial judge, may not exclude the first judge's decision because he disagrees with the first judge's determination of a question of law. On the other hand, the second judge is free to exercise his discretion concerning the admission of evidence, admitted or excluded at the earlier trial, without being bound by what the first judge may have done.

In any event, an interlocutory appeal would inject undesirable delay into the process of resolving eminent domain cases. If an interlocutory appeal were permitted, there is no assurance that a second appeal might not follow the jury trial. The presentation of all issues in one appeal is preferable.

In a variety of circumstances we have declined recently to permit interlocutory review of lower court rulings. *Pollack* v. *Kelly, ante,* 469, 471-472 (1977), and cases cited. The Appeals Court has held that where a new trial has been ordered in an eminent domain case, appellate review of the allowance of that motion will not be available until the completion of the second trial. *Oxley* v. *Water Supply Dist. of Acton,* 2 Mass. App. Ct. 842 (1974). See *Donovan* v. *Donovan,* 294 Mass. 94, 96 (1936).

We have recognized a right to interlocutory review of a District Court decision by the Appellate Division of the District Courts under the "remand" statute (G. L. c. 231, § 102C), but even in such a case there is no right to direct review in this court of the decision of the Appellate Division. *Fusco* v. *Springfield Republican Co.,* 367 Mass. 904, 906 (1975). See *Orasz* v. *Colonial Tavern, Inc.,* 365 Mass. 131, 139 (1974). Our experience with the process of appellate review between a District Court trial and a Superior Court trial of retransferred cases greatly dissuades us from constructing a pattern of interlocutory appellate review as of right occurring between the two statutorily prescribed Superior Court trials in an eminent domain case.

In *Boston Redevelopment Auth.* v. *Doherty,* 370 Mass. 99 (1976), we anticipated the conclusion we reach here when we suggested that a party to an eminent domain proceeding governed by § 22, as amended in 1973, could not seek interlocutory review of certain rulings. We said, "[S]ince the rulings ... were interlocutory and they were not reported by the judge, and the action for damages has not been tried on its merits, there has been no appellate review of the interlocutory rulings." *Id.* at 100-101. That opinion was entered in a separate action, and we granted relief because the harm asserted (improper reference to a

master before the first trial provided in § 22) could not be redressed adequately by an appeal after judgment in the Superior Court.

2. The evidence of the sale price of the Quincy land was properly excluded. In allowing the plaintiff's motion to strike the evidence which he had admitted de bene, the judge indicated that he was acting as a matter of law and was not acting in his discretion. Thus, the question before us is not whether the judge abused his discretion in a determination that a particular parcel was not comparable to the land taken. The question is whether there were circumstances of the sale of the Quincy land which made its sale price inadmissible. Relying on our opinion in *Iris v. Hingham,* 303 Mass. 401 (1939), the judge concluded that the circumstances of the sale of the Quincy land required that he not consider evidence of the sale price of that land.

The Quincy land was sold by the Boston Edison Company (Edison) to the Jordan Marsh Company (Jordans) on February 1, 1967. The land consisted of a substantial area of upland and surrounding tidal flats. Jordans paid $500,000 in cash to Edison and made a simultaneous agreement which related to adjoining land which Edison retained. Jordans agreed to construct a road connecting with public roads in Quincy and a railroad track from the New Haven right of way to the northerly bank of Billings Creek.[4] Edison retained a right to a fifty-foot easement over the Jordans parcel to reach and use the new road and to transmit electricity over the easement. Edison also retained the right to construct a railroad track over the Jordans parcel to reach and use the railroad track to be constructed by Jordans. If a bridge were built across the Neponset River from Dorchester to Squantum, each party agreed to give the other a fifty-foot right of way to the new road, if necessary. The evidence is clear that the obligation

---

[4] The road was to be approximately 5,000 feet long. The plaintiff asserts that the railroad track would be of the same distance, and the Commonwealth does not deny it.

assumed by Jordans to construct the road and the railroad track and to give Edison easements to reach and use the road and the railroad track were part of a single transaction, the sale of the Quincy property to Jordans. Cf. *Corliss Realty Co.* v. *Commonwealth,* 1 Mass. App. Ct. 689, 692 (1974). It is also clear that the land retained by Edison would be increased in value by the construction of those improvements.

In these circumstances the $500,000 sale price of the Quincy property was not the sole consideration for that property and, under our decision in *Iris* v. *Hingham,* 303 Mass. 401 (1939), the judge rightly excluded that sale price from evidence. In that case, we determined that evidence of a sale of presumably comparable land was improperly admitted "where the actual price could not be accurately and definitely stated in money or in some other consideration the value of which was readily ascertainable like a purchase price mortgage . . . [citations omitted] and depended upon . . . [certain] contingencies . . . ." *Id.* at 407. We said that "the sale lost its probative weight as evidence, and the jury should not have been permitted to surmise or speculate as to the amount paid for such premises. The whole transaction became remote and collateral to the principal issue." *Id.* at 408. The fact that Jordans was going to construct the facilities for its own benefit, as the Commonwealth points out, does not alter the fact that the benefit to Edison of the entire transaction was greater by some not readily ascertainable amount than the amount of cash which it received. In such a circumstance, the evidence of the sale of the Quincy property could not be considered by the judge in arriving at his decision concerning the fair cash value of the land taken from the plaintiff. See 5 Nichols, Eminent Domain § 21.3 [1], at 21-37 (rev. 3d ed. 1975); 1 L. Orgel, Valuation under Eminent Domain § 140, at 593-594 (2d ed. 1953).

3. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*